IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA RHODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | 02 C 2059 |
| LASALLE BANK, N.A., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Gloria Rhodes brought this action against Defendants LaSalle Bank, N.A. and M. Hill Hammock (collectively, "LaSalle") pursuant to (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000 et seq. ("Title VII")(Count I) and 42 U.S.C § 1981 (Count II), alleging LaSalle discriminated against her, treated her in a disparate manner and created a hostile work environment based on her race; and (2) Title VII and section 1981 (Count III), alleging retaliation after Rhodes complained of LaSalle's discriminatory employment practices. The instant matter comes before the Court on LaSalle's Motion to Dismiss based on Rhodes alleged pre-litigation theft of proprietary documents from LaSalle and discovery violations, pursuant to Federal Rule of Civil Procedure 37 and the Court's "inherent powers" under common law to sanction litigants for abuse of the judicial process. For the reasons set forth below, this Court GRANTS this motion.

## BACKGROUND[1]

Ms. Rhodes, an African-American female, began her employment with LaSalle in 1989. In 1990 she transferred to the executive offices of LaSalle and was under the immediate supervision of Hammock. In 2002, Rhodes brought this action against LaSalle and Hammock alleging racial discrimination, through salary and bonus inequities and retaliation after she complained about the alleged inequities and filed an EEOC charge.

As this case progressed through pre-trial motions and discovery, it appeared to be a typical employment discrimination case. This perception, however, drastically changed during Rhodes' deposition. At her deposition, LaSalle asked Rhodes several questions pertaining to a document produced during discovery styled an "Activity Log," which listed in detail over forty incidents over a ten year period supporting her discrimination and retaliation claims. Rhodes testified that she prepared the log in December of 2003, a month before her deposition, using notes she made contemporaneously with each incident. Despite knowing that she was required to retain and produce all relevant documents and did not have independent recollection of many of the entries, Rhodes admitted that she had destroyed the contemporaneous notes after completing the Activity Log.[2]

---

[1] The background facts are taken from the deposition transcripts and other attachments to the parties' submissions. Because the underlying facts of this case are thoroughly discussed in this Court's prior Memorandum and Order, this opinion will only address the facts relevant to this motion – e.g., Rhodes prelitigation theft of proprietary documents from LaSalle and discovery rules violations.

[2] On July 18, 2003, LaSalle served Rhodes with its First Request for Production of Documents under Rule 26. LaSalle requested a broad spectrum of documents, including all documents relating to her claim that LaSalle discriminated against her in salary and bonuses, retaliated against her by constructively discharging her after she complained about the disparity of her compensation, and all documents relating to discrimination charges Rhodes filed prior to working at LaSalle.

2

Rhodes also testified that, despite knowing of the broad request for documents, there might be some other notes at her home which had not been produced. Upon hearing this, LaSalle requested to go to Rhodes' home to inspect these notes. At Rhodes' home, LaSalle found over 3000 documents which should have been produced in response to LaSalle's request for production of documents.

Among the documents found in her home were: (1) documents relating to a discrimination claim which Rhodes filed against her former employer; (2) stolen proprietary and confidential documents belonging to LaSalle, many of which contained salary information and performance reviews for Rhodes and other employees; (3) a desk calender similar to one which she produced but which did not contain contemporaneous entries which support Rhodes' claims.

Based on these alleged violations of the rules which govern discovery, LaSalle now seeks to dismiss this action.

## ANALYSIS

LaSalle contends that dismissal is proper under both Rule 37 and this Court's "inherent powers" to punish litigants for violating the rules which govern discovery. The Court will first address both of these grounds in turn and will then discuss whether dismissal is an appropriate sanction.

Although the specific language of Rule 37 requires a litigant to violate a judicial order before sanctions may be imposed, a "formal, written order to comply with discovery is not required" for a court to impose sanctions, including dismissal, where a party violates the rules governing discovery. Quela v. Payco-General American Credits, Inc., 2000 WL 656681, at * 6 (N.D. Ill. May 18, 2000). See also Brandt v. Vulcan, Inc., 30 F.3d 752, 756 n.7 (7th Cir. 1994)

("[c]ourts can broadly interpret what constitutes an order for purposes of imposing sanctions"). The rationale for this broad interpretation of Rule 37 is that litigants are presumed to know that deceptive conduct is unacceptable, and parties should know that they "must not engage in such abusive litigation practices as coercing witness testimony, lying to the court, and tampering with the integrity of the judicial system." Quela, 2000 WL 656681, at * 6. See also Hal Commodity Cycles Management v. Kirsh, 825 F.2d 1136, 1139 (7th Cir. 1987) ("The Federal Rules of Civil Procedure, as well as local rules of court, give ample notice to litigants of how to properly conduct themselves"). Therefore, litigants who play by their own rules "will find that the game cannot be won." United States v. Golden Elevator, Inc., 27 F.3d 301, 302 (7th Cir. 1994).

In addition to Rule 37, courts have "inherent powers to sanction a litigant for bad-faith conduct," including dismissal for discovery violations. Dotson v. Bravo, 202 F.R.D. 559, 574 (N.D. Ill. 2001); Brady v. United States, 877 F. Supp. 444, 452 (N.D. Ill. 1994); Quela, 2000 WL 656681, at * 6. These powers may be applied even though there are written procedural rules that govern the same conduct. Dotson, 202 F.R.D. at 574. The purpose of giving courts' these "inherent powers" is that courts are charged to "manage their own affairs [and need] to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

Rule 37 and the "inherent powers" doctrine give courts a wide range of sanctions to cure violations of the rules governing the judicial process. Dismissal is considered to be a "draconian" sanction, and therefore, courts should be "vigilant" in dismissing an action for a violation of procedural rules. Maynard v. Nygren, 332 F.3d 462, 467 (7th Cir. 2003). Dismissal is proper, however, if the court makes a finding "by clear and convincing evidence of

willfulness, bad faith, or fault." Maynard v. Nygren, 332 F.3d 462, 468 (7th Cir. 2003). Conduct which constitutes "bad faith" includes "intentional or reckless disregard" of the rules. Marrocco v. General Motors Corp., 966 F.2d 220, 224 (7th Cir. 1992). "Fault, by contrast, doesn't speak to the noncomplying party's disposition, but rather describes the reasonableness of the conduct – or lack thereof – which eventually culminated in the violation." Id. In addition to wilfulness, bad faith, and fault, courts should examine if, and to what extent, the opposing party was prejudiced by the improper conduct and explain why lesser sanctions would be inappropriate. Brady, 877 F. Supp. at 452.

Applying the above factors, courts presume bad faith and prejudice where a party gave "perjurious answers during a deposition and in interrogatory responses," Dotson, 202 F.R.D. at 570, created false evidence or testimony, Quela, 2000 WL 656681, at * 6, altered, destroyed, or failed to produce documents "it knows or reasonably should know are relevant" to the case, Brady, 877 F. Supp. at 452, and stole "proprietary information" from the opposition before the litigation and then lied to cover the theft. Jackson v. Microsoft Corp., 211 F.R.D. 423, 425 (W.D. Wash. 2002). The decisions in these cases are premised on the fact that a litigant cannot be permitted to say "opps, you've caught me," and thereafter be "allowed to continue to play the game." Dotson, 202 F.R.D. at 570. Not to dismiss a case for such blatant disregard of the judicial process would "erode[] the public's confidence in the outcome of judicial decision, call[] into question the legitimacy of courts, and threaten[] the entire judicial system." Id. at 573.

Here, after carefully reviewing the parties' submissions and deposition transcripts, this Court finds by clear and convincing evidence that Rhodes acted in bad faith or was clearly at fault when she: (1) withheld, destroyed, and altered documents sought in LaSalle's request for

5

production of documents under Rule 26, which she knew or should have reasonably known were relevant to this action; (2) lied in her deposition regarding these documents; and (3) stole proprietary documents from LaSalle prior to instigating this action, which documents are directly relevant to her claim for constructive discharge.

On July 18, 2003, LaSalle served Rhodes with its First Request for Production of Documents under Rule 26. LaSalle requested a broad spectrum of documents, including all documents relating to her claim that LaSalle discriminated against her in salary and bonuses, retaliated against her by constructively discharging her after she complained about the disparity of her compensation, and all documents relating to discrimination charges Rhodes filed prior to working at LaSalle. Rhodes responded to this request on September 4, 2003, by producing seven pages of documents. After LaSalle complained about the lack of responsive documents, Rhodes turned over an addition 135 documents on December 22, 2003, and another 86 documents on January 23, 2004, six days before her deposition.

The documents Rhodes produced included a four page, single spaced document titled an "Activity Log," which listed in detail over forty incidents over a ten year period supporting her discrimination and retaliation claims. When asked about the Activity Log at her deposition, Rhodes admitted that she prepared the log in December of 2003, a month before her deposition, using notes she made contemporaneously with each incident. Despite knowing that she was required to retain and produce all relevant documents, including notes, and did not have an independent recollection of many of the entries, Rhodes admitted she had destroyed the contemporaneous notes after completing the Activity Log.

Now, after admitting to throwing away documents she knew to be relevant, Rhodes

contends that she only destroyed the notes "that had no relevance." Unfortunately, no one will ever know whether this is correct and given Rhodes other violations of discovery rules and admission that she stole documents, this Court would have trouble finding this statement credible. Moreover, viewing the Activity Log, it is clear to this Court that the notes which support the entries would clearly be relevant to Rhodes' constructive discharge claim and claim of salary discrimination. For example, the log contains quotes from conversations between her superiors dealing with salary and performance issues which Rhodes claimed to have overheard which allegedly support her discrimination and retaliation claims. Therefore, the original notes detailing these conversations should have been produced in response to LaSalle's request for documents.

In addition to admitting that she destroyed notes, Rhodes testified that, despite knowing of the request for documents, there might be some other notes at her home which had not been produced. Upon hearing this, LaSalle requested to go to Rhodes' home to inspect these notes. Much to its surprise, after arriving at Rhodes' home, LaSalle discovered over 3000 documents which should have been produced in response to LaSalle's request for production of documents.

Among the documents found in her home were documents relating to a discrimination claim which Rhodes filed against her former employer. Despite a request for all documents relating to any prior claim of discrimination, Rhodes did not produce these documents. Instead, she now contends that these documents are not relevant, and therefore, LaSalle has not suffered any prejudice. As stated above, the determination of relevancy is not for Rhodes to determine. If she had an objection, she could have come into court and contested the matter. Moreover, these documents seem relevant because the claims against her former employer appear to mirror

her current claims against LaSalle – disparity in pay and retaliation.

Also found at Rhodes' home were hundreds of proprietary and confidential documents belonging to LaSalle. Many of these documents contained salary information and performance reviews for Rhodes and many other employees. These documents were very relevant, and thus should have been produced, in that Rhodes' claims for salary discrimination and constructive discharge are premised on her belief that she was underpaid in comparison to her white co-workers – a belief which now appears to have stemmed from her reading of the confidential documents that she stole.

Caught red handed, Rhodes does not deny that she stole these documents. Instead She testified that she started taking and copying documents in 1992 after she was passed over for a bonus. In what may be one of the most outrageous arguments ever made before this Court, Rhodes asserts that "like Rosa Parks" she "said enough is enough," and although she broke the law, she "exposed a greater harm, here, [LaSalle's] discriminatory conduct . . . . Both women stand for the proposition that I will put it all on the line and pay whatever cost is necessary for what is fair and reasonable. " Unlike Rosa Parks, whose only recourse was to break a patently unconstitutional law, if Rhodes really believed that she was being discriminated against in 1992, she could have filed suit under Title VII and Section 1981, statutes which were not available to Rosa Parks, and legally gotten the same documents she stole through discovery.

Similarly absurd is Rhodes defense that she did not really steal these documents from LaSalle because her boss left them sitting on his "cluttered desk." These documents were highly confidential and personal, and Rhodes had no business seeing them let alone copying them and taking them home.

8

Also found at Rhodes home was a desk calendar. This finding is significant because before her deposition, Rhodes produced another desk calendar. Rhodes testified that the produced desk calendar, which Rhodes termed her "personal calendar," contained contemporaneously made entries which support her claims. The calendar, which was not produced but found at Rhodes' home, termed her "official calendar," was identical to the "personal calendar" but for the fact that it did not have the alleged contemporaneous entries which support Rhodes' claims. LaSalle contends that Rhodes likely fabricated the "personal calendar" to support this action. In light of Rhodes conduct, this Court agrees that this is a reasonable inference. Regardless, the "official calendar" should have been produced in response to LaSalle's request for production of documents.

Accordingly, based on the above evidence, this Court finds by clear and convincing evidence that: (1) Rhodes acted in bad faith in that she recklessly disregarded the rules governing discovery by altering, destroying, manufacturing, and hiding documents she knew or should reasonably have known to be relevant and within the scope of LaSalle's request to produce; and (2) her violations of the rules governing discovery prejudiced LaSalle. Moreover, given the blatant and continuous nature of Rhodes' conduct, this Court finds that a sanction other than dismissal, such as exclusion of evidence, would be an "open invitation to abuse the judicial process" because "litigants would infer they have everything to gain and nothing to lose" by trying to lie, cheat, and abuse the orderly rules of discovery. Brady, 877 F. Supp. at 453. Therefore, this Court GRANTS the motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [51-1] is GRANTED. If so desired, Defendants should file any motions regarding fees and costs not later than February 18, 2005, with a response to be filed by March 4, 2005, and a reply, if necessary by March 11, 2005. It is so ordered.

ENTER:
　　　　　　　　　　　　　　　　　　　　　*Blanche M. Manning*
　　　　　　　　　　　　　　　　　　　　　**BLANCHE M. MANNING**
　　　　　　　　　　　　　　　　　　　　　**U.S. DISTRICT COURT JUDGE**

DATED: 2-1-05